IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES *ex rel.* THOMAS MILLS, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> ALAN UCHTMAN, Warden, Menard ) <br> Correctional Center, ) <br> ) <br> Respondent. ) | Civil Action No.: 05 C 6270 <br><br> Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

After a state court jury trial in 1998, Thomas Mills was convicted of two counts of first degree murder. He was sentenced to life imprisonment without parole. He lost his direct appeal and two post-conviction petitions in Illinois courts. Proceeding *pro se*, he petitions for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

### BACKGROUND

**I.    The Trial**

Factual findings of state courts are presumed correct in a federal *habeas* proceeding unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Abrams v. Barnett*, 121 F.3d 1036, 1038 (7th Cir. 1997). The record does not reveal any evidence contrary to the findings of the Illinois courts. Accordingly, the following facts are taken from the Illinois Appellate Court's Rule 23 Order, *People v. Mills*, No. 2-98-1306, slip op. (Ill. App. Ct. 2d Dist. June 23, 2000), filed in this case as Respondent's Exhibit A.

At approximately 2:30 a.m. on March 2, 1997, a man approached Tyrone Davis and L.G. Turner at a Mobil gas station located on the corner of Martin Luther King Drive and Lewis Avenue in North Chicago. The man put a gun to Davis' head and fired one shot. The bullet passed through Davis and into Turner, killing both.

Three days after the shooting, Cortez Humphrey, a confidential informant, told the police that Judon Hall and Larry Mackins witnessed the shooting and identified Mills as the shooter. Humphrey believed Mills killed Davis because Davis had stolen from drug dealers in the area. On May 18, 1997, the state charged Mills for the murders. The state's theory of the case was that Mills believed Davis had broken into his house, robbed him, and threatened his girlfriend and their two children. The state contended that shortly before the shooting, Mills went to the Mobil station with three friends, Tyrone Stewart ("Tyrone"), Chalmer Stewart ("Chalmer"), and David Towns. Mills spotted Davis at the Mobil station. Mills then took off with his friends in Tyrone's van, but they drove only partially around the block. Mills left the van, ran back to the Mobil station, shot Davis and Turner, and returned to the van.

About four months before trial, Mills' lawyers, James Borrasso and Robert Fox, discovered that Humphrey was a confidential informant in Mills' case. Fox learned Humphrey changed his story to the police: Humphrey did not hear about the shooting from Hall and Mackins, but he actually saw Mills shoot the victims. Humphrey told the police Mills threatened him while they were both held in the Lake County jail. At the time Borrasso was representing Humphrey in several unrelated criminal cases. To avoid conflict, Borrasso withdrew as Humphrey's counsel. The state did not call Humphrey as a witness at trial.

At trial, two occurrence witnesses – Hall and Monica Compton – identified Mills as the shooter. Compton had identified Mills in a photographic lineup during the investigation. In addition to Compton and Hall, Yvonne Pitts, who stood about three feet away from the shooter, testified to the shooter's complexion and height; her testimony matched Mills' features.

Tyrone, Chalmer, and Towns testified they spent the night of the shooting with Mills in Tyrone's van. Tyrone testified that when Mills first got in the van, Mills said he had a gun. Tyrone drove the four to the Mobil station at around 2:00 a.m.; they stayed there for about ten minutes. Then they pulled the van over somewhere between Martin Luther King Drive and an alley behind the Mobil station. Tyrone left the van to urinate in the streets; he saw Mills exit the van, but did not know where Mills went. Tyrone heard a "pop" sound a few seconds after he began urinating; he returned to the van after urinating. Mills returned to the van five or six seconds after Tyrone. Tyrone denied two statements he had previously made before a grand jury: (1) Mills paid attention to a man as Tyrone stopped the van; and (2) Mills said he "popped" someone when he returned to the van. Tyrone explained to the trial jury that he made these two statements under police intimidation. But consistent with Tyrone's second statement to the grand jury, Towns testified at trial that Mills said he "popped" someone.

Other credibility issues arose from trial testimony. Hall testified for the state in exchange for the state's favorable treatment in two unrelated cases. There was inconsistent testimony about the shooter's clothing; witnesses disagreed on whether the shooter wore a hooded sweater, jacket, or coat and whether he wore a mask.

After the verdict, Mills moved for a new trial, claiming ineffective assistance of counsel based on failure to call Humphrey and Belinda Caples as witnesses. At the motion hearing, Caples,

who claimed to have witnessed the shooting, testified Mills was not the shooter. Fox testified he did not call Caples as a witness because she was a convicted felon and a drug addict and because she refused to cooperate. Fox testified he did not call Humphrey as a witness because Humphrey would identify Mills as the shooter and accuse Mills of witness intimidation. Mills' motion was denied. He was sentenced to life imprisonment without parole.

## II.   Appeal and Collateral Proceedings

Mills based his direct appeal on four grounds: (1) insufficiency of the evidence; (2) state's use of perjured testimony; (3) counsel's failure to call certain witnesses; and (4) Borrasso's conflict of interest. Resp. Ex. B at 2. Mills articulated two bases for his conflict of interest claim: (1) Borrasso's prior representation of Humphrey resulted in actual prejudice under the Sixth Amendment; and (2) Borrasso engaged in *per se* conflict of interest under Illinois case law. *Id.* at 23-26. The Appellate Court affirmed Mills' conviction and sentence. Specifically, the Appellate Court held that the *per se* conflict of interest rule did not apply to Mills and that Borrasso's failure to call Humphrey did not prejudice him. Resp. Ex. A at 21-22. Mills petitioned the Illinois Supreme Court for leave to appeal. On the conflict of interest claim, he appealed only the Appellate Court's refusal to apply the *per se* rule. Resp. Ex. E at 11-13. His petition was denied. Resp. Ex. F at 1.

In addition to his direct appeal, Mills twice petitioned for post-conviction relief pursuant to 725 ILL. COMP. STAT. 5/122-1, *et seq.* In his first petition, he claimed his appellate counsel was ineffective for failing to argue on direct appeal that the state had improperly excluded Jewish jurors in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). Resp. Ex. G at 2. This petition was denied as baseless. Resp. Ex. H at 2. In his second petition, he claimed his trial counsel was ineffective for failing to call certain witnesses, including Humphrey and Caples. Resp. Ex. O at 2. The second

4

petition was denied on three grounds: (1) the petition was untimely; (2) *res judicata* barred the claims based on Humphrey and Caples; and (3) the claims based on new witnesses were waived. Resp. Ex. P at 2-3. The Appellate Court affirmed both denials. Resp. Ex. L at 1, Ex. T at 1. Mills' petitions for leave to appeal to the Illinois Supreme Court were denied. Resp. Ex. N at 1, Ex. V at 1.

In this *habeas* petition, Mills raises five claims: (1) Borrasso's prior representation of Humphrey created a conflict of interest in violation of the Sixth Amendment; (2) his conviction was unconstitutional because the state used perjured testimony; (3) evidence against him was insufficient to establish guilt beyond a reasonable doubt; (4) his appellate counsel was ineffective for failing to raise a *Batson* claim; and (5) he was actually innocent.

## DISCUSSION

### I. Standard of Review

Before Mills can present a claim for a writ of *habeas corpus*, he must first have fairly presented that claim in one complete round of state appellate review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Mills must first seek review from the Appellate Court and then file a petition for leave to appeal to the Illinois Supreme Court. *Id.* at 843; *Rittenhouse v. Battles*, 263 F.3d 689, 697 (7th Cir. 2001) (a petitioner must present his claim to *both* the Appellate Court and the Illinois Supreme Court). He must present both the operative facts and the controlling legal principles. *Harrison v. McBride*, 428 F.3d 652, 661 (7th Cir. 2005). To decide whether Mills has met the fair-presentment requirement, the court must consider four factors: (1) whether he relied on federal cases that engage in a constitutional analysis; (2) whether he relied on state cases which apply a constitutional analysis to similar facts; (3) whether he framed the claim in terms so particular as to

5

call to mind a specific constitutional right; and (4) whether he alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Id.* In essence, the court's task is to assess whether Mills sufficiently alerted the state courts to his federal claims. *Id.*

If Mills meets the fair-presentment requirement, the court will conduct a deferential review of the state court decisions on his claims. *See* 28 U.S.C. § 2254(d); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (federal courts must give state courts the benefit of the doubt). The court cannot conduct its own independent inquiry into whether the state courts were correct. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004). The court must defer to state courts if their decisions are reasonable or "minimally consistent with the facts and circumstances of the case." *Schulz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002).

## II.     Conflict of Interest

### A.     Procedural Default

In his direct appeal, Mills argued Borrasso's prior representation of Humphrey constituted *per se* conflict of interest under Illinois law and prejudiced his defense under the Sixth Amendment. Resp. Ex. B at 23. By claiming actual prejudice, he properly presented a Sixth Amendment claim. The Appellate Court rejected this claim, holding no prejudice resulted from counsel's decision not to call Humphrey. Resp. Ex. A at 22. In his subsequent petition for leave to appeal to the Illinois Supreme Court, Mill failed to appeal this holding. *See* Resp. Ex. E at 11-13.

Respondent argues Mills failed to fairly present his Sixth Amendment claim to the Illinois Supreme Court. Indeed, Mills' conflict of interest argument in his petition for leave to appeal fails the four-factor test in *Harrison*. As for the first two factors, Mills relied solely on the *per se* rule under Illinois law. He framed his argument under the heading: "THOMAS MILLS' SIXTH

6

AMENDMENT RIGHTS WERE VIOLATED BY COUNSEL'S *PER SE* CONFLICT OF INTEREST." *Id.* at 11. Throughout the argument, he cited only two Illinois cases, *People v. Spreitzer*, 525 N.E.2d 30 (Ill. 1988), and *People v. Thomas*, 545 N.E.2d 654 (Ill. 1989). Both cases stand for the *per se* rule, which requires no showing of prejudice or adverse effect. *Spreitzer*, 525 N.E.2d at 34; *Thomas*, 545 N.E.2d at 657. By contrast, federal case law requires, at a minimum, a showing of an actual conflict of interest adversely affecting counsel's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). *Spreitzer* notes "[t]he term '*per se*' does not appear in the United States Supreme Court case law." *Spreitzer*, 525 N.E.2d at 34. Accordingly, Mills failed to present the controlling legal principles of his Sixth Amendment claim to the Illinois Supreme Court.

As for factors three and four, Mills' passing references to the Sixth Amendment cannot cure the procedural default. In his petition for leave to appeal, Mills mentioned prejudice twice: (1) "Borrasso[] suffered from a *per se* conflict of interest that adversely affected his performance"; and (2) "Borrasso created a *per se* conflict of interest . . . [and] Mills was prejudiced by this conflict." Resp. Ex. E at 11, 12. Each of these references points to the *per se* standard. The fact that Mills relied solely upon state law principles belies the speculation that the Illinois Supreme Court would analyze his claim under the more stringent federal standard. *See Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001). Accordingly, Mills' Sixth Amendment claim is procedurally defaulted. *Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001) ("[a] mere 'passing reference' to a constitutional issue certainly does not suffice").

Procedural default may be excused if Mills demonstrates either "cause and prejudice" or a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Cause is an external impediment preventing Mills from presenting his federal claim to the state courts.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice is a violation of Mills' federal rights "infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Mills does not present any cause or prejudice. Nor can he show that a miscarriage of justice would result if *habeas* relief is foreclosed. The burden for showing a miscarriage of justice is extremely high: he must establish he is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995). Nothing in this record remotely meets this burden. Moreover, as discussed in Section VI below, his actual innocence claim lacks merit. His procedural default cannot be excused.

**B.    Merits**

Even assuming procedural default does not bar Mills' conflict of interest claim, the Appellate Court's adjudication of this claim is objectively reasonable under 28 U.S.C. § 2254(d). Mills has two ways to assert a conflict of interest claim. First, he may show that Borrasso had a potential conflict of interest and that the potential conflict prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, he may show an actual conflict adversely affected Borrasso's performance. *Sullivan*, 446 U.S. at 348. *Sullivan* places a lighter burden on Mills than *Strickland* because it is significantly easier to show "adverse effect" than to show "prejudice." *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004). But even under *Sullivan*, Mills does not have a claim. To establish an actual conflict, Mills must show: (1) Borrasso's representation of Humphrey was substantially related to his representation of Mills; or (2) Borrasso learned particular confidential information from Humphrey that was relevant to Mills' case. *Id.* No evidence supports a finding of either prong; as a result, Borrasso did not have an actual conflict under *Sullivan*. As for adverse effect, Mills must show "a reasonable likelihood that [Borrasso's] performance would have been different had there been no conflict." *Id.* at 974. Mills' argument that his lawyers should have called

8

Humphrey as a witness is baseless. Humphrey could only have harmed Mills' defense by identifying him as the shooter and accusing him of intimidating a witness. Mills also argues his lawyers should have explored Humphrey's involvement in inter-gang robberies. This argument is frivolous because evidence of inter-gang robberies would only strengthen the state's theory on Mills' motive. The Appellate Court correctly rejected these arguments. *See* Resp. Ex. A at 16-22. Mills' claim based on conflict of interest must be denied.

### III. Perjured Testimony

The Fourteenth Amendment prohibits states from using perjured testimony in criminal trials. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To establish a *habeas* claim on this ground, a petitioner must show: (1) the state's case included false testimony; (2) the state knew, or should have known, of the false testimony; and (3) there is some likelihood that the false testimony could have affected the trier of fact's judgment. *United States v. Adcox*, 19 F.3d 290, 295 (7th Cir. 1994). In deciding whether to grant *habeas* relief, courts must consider whether the petitioner had an adequate opportunity to expose the alleged perjury on cross-examination. *Id.*

The Appellate Court correctly applied these rules in considering Mills' claim. In his direct appeal, Mills argued the state knowingly used Tyrone's perjured testimony at trial. The Appellate Court rejected this argument on the basis that Mills had exposed Tyrone's perjury at trial. Resp. Ex. A at 25. Mills now argues the Appellate Court erred in refusing to admit Tyrone's perjury indictment into the record. This argument is without merit because, as the Appellate Court correctly concluded, the indictment had no bearing on whether Tyrone lied to the grand jury or to the trial jury. *Id.* The Appellate Court's reasoning mirrors federal cases holding that inconsistencies between grand jury and trial testimony do not warrant an inference of the use of perjured testimony. *United*

States v. Hemmer, 729 F.2d 10, 17 (1st Cir. 1984); *see also United States v. Holladay*, 566 F.2d 1018, 1019 (5th Cir. 1978) (*per curiam*) ("[p]resentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury"). Accordingly, Mills' claim must be denied.

## IV. Insufficiency of the Evidence

Due process is satisfied if, viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Appellate Court correctly applied this standard to Mills' claim based on insufficiency of the evidence. Resp. Ex. A at 26. The Appellate Court thoroughly discussed the evidence and addressed each of Mills' arguments. The Appellate Court concluded that the testimony of Compton, Tyrone, and Towns, viewed in the most favorable light, supports the guilty verdict. *Id.* at 31. The Appellate Court therefore "provided fair process and engaged in reasoned, good-faith decisionmaking." *Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1997), *rev'd on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1997).

## V. *Batson* Claim

Mills contends his appellate counsel was ineffective for failing to argue on direct appeal that the state had violated *Batson*. Mills would have a colorable Sixth Amendment claim only if counsel's failure resulted in prejudice. *Strickland*, 446 U.S. at 687. His claim, therefore, turns on whether his *Batson* claim is meritorious.

Mills' *Batson* claim arises from *voire dire*:

> [Mills] objected under *Batson*, arguing that the State's peremptory challenge of four venirepersons violated *Batson* because those four individuals were Jewish. The State responded that "[w]e don't know if any of these [venirepersons] are Jewish anyway.

> No one has ever asked them." The trial court commented that it did not "know that everyone that you've listed . . . has been Jewish. I can make some reasonable assumptions based on names perhaps, but that's never been asked, nor does it appear on any of the materials." The trial court added that [Mills] did not establish that any of the four was Jewish . . . . The trial court denied defendant's *Batson* challenge.

Resp. Ex. L at 2. Relying on *Joseph v. State*, 636 So. 2d 777 (Fla. Dist. Ct. App. 3d Dist. 1994), Mills argues for extending *Batson* to cover Jews as a protected class. *Joseph* interprets the Florida Constitution and therefore has no relevance to a *habeas* review. *See* 28 U.S.C. § 2254(d)(1). The Supreme Court has not extended *Batson* to religious affiliations. *See Miller-El v. Dretke*, 125 S. Ct. 2317, 2342 (2005) (Breyer, J., concurring) (citing conflicting lower court decisions on this issue). But the court need not decide this issue because Mills' *Batson* claim is factually defective.

To establish a *Batson* claim, Mills must first make a *prima facie* showing that the state exercised peremptory challenges on the basis of religion or ethnicity. *See United States v. Stephens*, 421 F.3d 503, 510 (7th Cir. 2005). A *prima facie* case requires Mills to "show[] facts and circumstances that raise an inference of discrimination." *Id.* The Appellate Court held Mills failed to make this showing because no evidence suggested any of the four venirepersons was Jewish. Resp. Ex. L at 6. This holding is consistent with the facts and case law. *See United States v. Campione*, 942 F.2d 429, 433 (3d Cir. 1991) (*prima facie* case cannot be based on ethnic-sounding surnames). The Appellate Court's sound decision precludes *habeas* relief.

**VI.   Actual Innocence**

As a general rule, claims of actual innocence based on newly discovered evidence are not grounds for federal *habeas* relief. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal *habeas* courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.* As an exception to the rule, the

court reviews actual innocence claims only where the "newly discovered evidence is so compelling that it would be a violation of the fundamental fairness embodied in the Due Process Clause not to afford a [petitioner] a new trial." *Coogan v. McCaughtry*, 958 F.2d 793, 801 (7th Cir. 1992) (internal quotation marks omitted).

Mills' actual innocence claim does not fall under this exception. The evidence of his guilt was strong. Compton and Hall identified Mills as the shooter. Chalmer, Tyrone, and Towns placed Mills at or near the Mobil station at the time of the shooting. Towns testified at trial, as Tyrone did before the grand jury, that Mills said he shot someone. To rebut incriminating testimony, Mills submits four affidavits in support of his actual innocence claim. But these affidavits fall far short of establishing his innocence. Only one of the affiants claims to have witnessed the shooting; he makes statements about the shooter's clothing and the color of the shooter's car. The other affiants describe Mills' clothing on the night of the shooting. These affidavits are inconsistent with the testimony of several trial witnesses. Inconsistencies might bring this case closer, but they fail to establish it is "more likely than not that no reasonable juror would have convicted [Mills]." *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). Thus, Mills' actual innocence claim must be rejected.

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpus* is denied.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

March 14, 2006